**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs and the Class*

JUDGE ENGELMAYER

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

RAISBEL PEÑA and JANE DOES 1-100,
on behalf of themselves and others similarly situated,

                    Plaintiffs,

        v.

TALIKA USA, INC.

                 Defendant.

---

**15 CV 452**

Case No.:

**CLASS ACTION COMPLAINT**

JURY TRIAL DEMANDED

RECEIVED
JAN 21 2015
U.S.D.C. S.D.N.Y.

Plaintiffs, RAISBEL PEÑA  and JANE DOES 1-100 (hereinafter, "Plaintiffs"), individually and

on behalf of others similarly situated, by and through their undersigned attorneys, hereby file this

Class Action Complaint against Defendant TALIKA USA, INC. and state as follows based upon

their own personal knowledge and the investigation of their counsel (Plaintiffs believe that

substantial evidentiary support will exist for the allegations set forth herein after a reasonable

opportunity for discovery):

<u>**NATURE OF THE ACTION**</u>

   1.  Product labels have occupied an important role in assisting consumers in making

informed purchasing decisions.

2. This is a class action seeking redress for Defendant's deceptive practices in their marketing, advertising and promotion of their Talika Bust Serum 2.0 (hereinafter "Serum" or "Product"). As alleged with specificity herein, through an extensive, widespread, comprehensive and uniform marketing campaign, Defendant has engaged in, and continues to engage in, unconscionable business practices and deceptive acts in connection with the marketing and sale of the Product, which has injured Plaintiffs and the putative class. Several aspects of the Product packaging, advertising and marketing materials, individually and collectively, are false or at a minimum highly misleading and are likely to cause confusion, mistake, or deception in the minds of ordinary reasonable consumers, including claims that the Product causes breasts to (i) grow in volume, (ii) change in contour, (iii) increase in firmness and (iv) lift.

3. Plaintiffs and Class members reviewed Defendant's misleading marketing and product packaging, reasonably relied in substantial part on the labels and were thereby deceived in deciding to purchase the Product for a premium price.

4. Plaintiffs bring this proposed consumer class action on behalf of themselves and all other persons nationwide, who, from the applicable limitations period up to and including the present (the "Class Period"), purchased for consumption and not resale, the Product.

5. Defendant's actions constitute violations of New York's Deceptive Acts or Practices Law, Gen. Bus. Law § 349, as well those similar deceptive and unfair practices and/or consumer protection laws in other states.

6. Defendant violated statutes enacted in each of the fifty states and the District of Columbia, which are designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising. These statutes are:

    *a.*   Alabama Deceptive Trade Practices Act, Ala. Statues Ann. §§ 8-19-1, *et seq.;*
    *b.*   Alaska Unfair Trade Practices and Consumer Protection Act, Ak_ Code § 45.50.471, *et seq.;*
    *c.*   Arizona Consumer Fraud Act, Arizona Revised Statutes, §§ 44-1521, *et seq.;*

d.  Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.;*
e.  California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.,* and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.;*
f.  Colorado Consumer Protection Act, Colo. Rev. Stat. § 6 - 1-101, *et seq.;*
g.  Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et seq.;*
h.  Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.;*
i.  District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, *et seq.;*
j.  Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.;*
k.  Georgia Fair Business Practices Act, § 10-1-390 *et seq.;*
l.  Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480 1, *et seq.,* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes § 481A-1, *et seq.;*
m.  Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq.;*
n.  Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.;*
o.  Indiana Deceptive Consumer Sales Act, Indiana Code Ann. §§ 24-5-0.5-0.1, *et seq.;*
p.  Iowa Consumer Fraud Act, Iowa Code §§ 714.16, *et seq.;*
q.  Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et seq.;*
r.  Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et seq.,* and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann §§ 365.020, *et seq.;*
s.  Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. § § 51:1401, *et seq.;*
t.  Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq,,* and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.,*
u.  Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq.;*
v.  Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A;
w.  Michigan Consumer Protection Act, § § 445.901, *et seq.;*
x.  Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et seq.;* and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.;*
y.  Mississippi Consumer Protection Act, Miss. Code Ann. §§ 75-24-1, *et seq.;*
z.  Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.;*
aa.  Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code §30-14-101, *et seq.;*
bb.  Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, *et seq.,* and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq.;*
cc.  Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et seq.;*
dd.  New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq. ;*
ee.  New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 *1, et seq.;*
ff.  New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57 12 *1, et seq. ;*
gg.  New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §§ 349, *et seq. ;*
hh.  North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et seq.;*
ii.  North Carolina Unfair and Deceptive Trade Practices Act, North Carolina General Statutes §§ 75-1, *et seq.;*
jj.  Ohio Deceptive Trade Practices Act, Ohio Rev. Code. Ann. §§ 4165.01. *et seq.;*
kk.  Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.;*
ll.  Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.;*
mm.  Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Penn. Stat. Ann. § § 201-1, *et seq.;*
nn.  Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.;*
oo.  South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq. ;*

pp. South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 *1, et seq.;*

qq. Tennessee Trade Practices Act, Tennessee Code Annotated §§ 47-25-101, *et seq.;*

rr. Texas Stat. Ann. §§ 17.41, *et seq.,* Texas Deceptive Trade Practices Act

ss. Utah Unfair Practices Act, Utah Code Ann. §§ 13-5-1, *et seq.;*

tt. Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, § 2451, *et seq.;*

uu. Virginia Consumer Protection Act, Virginia Code Ann. §§59.1-196, *et seq.;*

vv. Washington Consumer Fraud Act, Wash. Rev, Code § 19.86.010, *et seq.;*

ww. West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.;*

xx. Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100. 18, *et seq.;*

yy. Wyoming Consumer Protection Act, Wyoming Stat. Ann. §§40-12-101, *et seq.*

7. Defendant has deceived Plaintiffs and other consumers nationwide by making false claims about its Products. Defendant has been unjustly enriched as a result of its conduct. As a result of these unfair and deceptive practices, Defendant has collected millions of dollars from the sales of the Products that it would not have otherwise earned. Plaintiffs bring this action to stop Defendant's misleading practice.

## JURISDICTION AND VENUE

8. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d). This is a putative class action whereby: (i) the proposed class consists of over 100 class members; (ii) at least some of the proposed class members have a different citizenship from Defendant; and (iii) the amount in controversy exceeds the sum of value of $5,000,000.00, excluding interest and costs.

9. The Court has jurisdiction over the federal claims alleged herein pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States.

10. The Court has jurisdiction over the state law claims because they form part of the same case or controversy under Article III of the Unites States Constitution.

11. Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states.

4

12. This court has personal jurisdiction over Defendant because its Product is advertised, marketed, distributed, and sold throughout New York State; Defendant engaged in the wrongdoing alleged in this Complaint throughout the United States, including in New York State; Defendant is authorized to do business in New York State; and Defendant has sufficient minimum contacts with New York and/or otherwise have intentionally availed itself of the markets in New York State, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendant is engaged in substantial and not isolated activity within New York State.

13. Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391(a) and (b), because a substantial part of the events giving rise to Plaintiff PEÑA's claims occurred in this District and Defendant is subject to personal jurisdiction in this District. Plaintiff purchased Defendant's Product in New York County.

## **PARTIES**

14. Plaintiff PEÑA is a citizen of the State of New York and resides in Bronx County. In or around 2014, Plaintiff PEÑA was exposed to and saw Defendant's bust claims by viewing a Talika bust serum display and reading the Product label at a Duane Reade store located in Manhattan. In reliance on the bust claims, Plaintiff PEÑA purchased the Product for personal consumption at a Duane Reade in New York County. The retail purchase price was approximately $60.00 for 1 bottle of the Product. Plaintiff PEÑA used the Product as directed for approximately a month and a half, but did not observe any physical alteration (either growth in volume, change in contour, firmness or lift) of her breasts. As a result, Plaintiff PEÑA suffered injury in fact. Had Plaintiff PEÑA known the truth about Defendant's misrepresentations and omissions, she would not have purchased the premium priced Product but would have purchased a less expensive bust serum.

15. Plaintiffs JANE DOES are, and at all relevant times hereto are citizens of various states of the United States and the District of Columbia. Plaintiffs JANE DOES have purchased the Product at a premium price and were financially injured as a result of Defendant's deceptive conduct as alleged herein.

16. Defendant TALIKA USA, INC. is a domestic corporation organized under the laws of the state of Delaware, with its principal place of business at 349 Fifth Avenue, New York, NY 10016 and an address for service of process at National Corporate Research, Ltd., 615 S Dupont Hwy, Dover DE 19901.

## FACTUAL ALLEGATIONS

**Defendant**

17. Defendant develops, manufactures, markets and sells cosmetic products for consumer and professional markets. It provides eye care, face care and body care, products throughout the United States through a network of suppliers. Defendant manufactures, markets and sells the bust serum as part of its body care line.

18. The Talika cosmetics line is sold at stores such as Duane Reade, CVS, and e-commerce websites such as Amazon.com and Dermstore.com.

**Bust Serum 2.0**

19. Defendant manufactures, markets and sells the Talika Bust Serum® 2.0 (the "Bust Serum" or "Product"), a breast serum in Talika's cosmetics line. The Product retails for approximately $60.00.

20. Defendant has consistently conveyed the very specific message to consumers throughout the United States, including New York, that the Product, with its "bust serum" will cause the following:

    o  + 2 to 4 cm in volume

    o  + 18% lift

○  + 70% firmness

21. Defendant's misleading marketing campaign begins with its deceptive product claim "+1 cup in 6 weeks," buttressed with equally deceptive claims of the Product's "push up effect." Both imply that the Product is not just cosmetic in nature, but will actually cause physical alterations to breasts, including increased breast volume. Defendant's exhaustive advertising campaign builds on this deception. For example, on each and every Bust Serum package label, Defendant prominently represents that the Product causes "lift, contour, firmness & moisturizing." See Product packaging below:

 

22.     As shown above, the most prominent image on the Product packaging is a breast with two blue arrows, one pointed upward and the other pointed outward. To the right of the shaded breast is a blue line outlining the lift and growth that use of the Product allegedly results in.

23.     Defendant adds asterisks to the words "Lift" and "Firmness" that are linked to the statements "*The skin appears lifted" and "**The skin appears firmer to the touch." Defendant's

8

disclaimers fail to make clear that use of the Product causes purely cosmetic results given the overwhelmingly deceptive and misleading advertising campaign used by Defendant. The following advertisement is used to market the Product in retail stores and online. It is placed prominently at retail locations and Plaintiff and Class members viewed and relied on the representations therein:



9

24. The advertisement above clearly shows and states that use of the Product results in "+1 Cup in 6 weeks" and claims that breasts may increase in volume by as a much as two to four centimeters. While the Product claims to instantly increase bust size, Defendant also promises that consumers will experience an additional benefit – 18% lift and 70% increased firmness. To buttress its bust claims, the Defendant claims that the Product is "A Revolution for the bust!" and equals "the push-up effect in a bottle!"

25. In the six month period prior to the filing of this Complaint, Plaintiff PEÑA saw the representations above in a Duane Reade store in New York and was influenced substantially to purchase the Product. Plaintiff PEÑA and Class members purchased the Product based on Defendant's representations that it would cause their breasts to grow in volume, change in contour, increase in firmness and lift. After using the Product as directed on the packaging, Plaintiff PEÑA and Class members did not experience any of the results claimed by Defendant.

26. Nowhere on the Product's packaging does Defendant represent that the Product's bust claims come from any consumer or clinical confirmatory studies. Although some information regarding the confirmatory studies are available on Defendant's website, Defendant fails to make the clinical information or results available to consumers such as Plaintiff, who simply walk into the store and purchase the Product based on its deceptive packaging and in-store representations.

27. Taken in its context, Defendant's representations on its Product packaging and marketing materials are deceptive in that they impart the message that breasts will actually grow larger as a result of continuous use of the Product.

28. The represented breast claims would not be interpreted by the reasonable consumer as being purely cosmetic in nature because none of the representations in the advertisement above are preceded by language to suggest so. For example, Defendant's competitor product, Eveline

Cosmetics' Slim Extreme 3D Super-Concentrated Modeling Bust Serum, contains language that indicates that results are purely cosmetic. The product packaging states that the product "Visibly Improves Bust *Appearance*" and provides a "Fuller and Firmer *Look*." Eveline Cosmetics also refrains from using images that suggest its product causes an increase in breast volume. However, Defendant claims that its Product actually causes breasts to grow in a matter of weeks. In describing some of the Product's ingredients on the Product packaging, Defendant states as follows:



29. In truth, the Product does not physically increase bust volume and certainly not within the short time frame advertised by Defendant. There is nothing contained in the Product that can cause breasts to grow by a cup size in six weeks. Defendant's bust growth claims are false, misleading and reasonably likely to deceive the public.

30. Defendant's claim that its over-the-counter non-prescription grade Product physically grows breasts by a full cup size in as little as six weeks is particularly attractive to Defendant's target market. Each and every consumer who purchases the Product is exposed to Defendant's deceptive growth claims because they appear prominently, conspicuously, and almost exclusive of any other representations on the image in the front and back of the Product packaging as well as in advertisements next to the Product in stores such as Duane Reade.

31. The back panel of the Product is identical to the front except that it contains the claims in French instead of English.

**The Federal and State Regulatory Schemes**

32. Cosmetic manufacturers are required to comply with federal and state laws and regulations that govern the labeling and packaging of their products.

33. The FDCA, 21 U.S.C. 301 *et seq.*, governs the sale of foods, drugs, and cosmetics in the United States. The classification of a product as a food, drug, or cosmetic, affects the regulations by which the product must abide. In general, a product is characterized according to its intended use, which may be established, among other ways, by: (a) claims stated on the product's labeling, in advertising, on the Internet, or in other promotional materials; (b) consumer perception established through the product's reputation, for example, by asking why the consumer is buying it and what the consumer expects it to do; or (c) the inclusion of ingredients well-known to have therapeutic use, for example, fluoride in toothpaste.[1]

34. The FDA defines cosmetics by their intended use, as "articles intended to be rubbed, poured, sprinkled, or sprayed on, introduced into, or otherwise applied to the human body... for cleansing, beautifying, promoting attractiveness, or altering appearance," 21 U.S.C. § 321(i)(1).

35. Under 21 U.S.C. §§ 362(a) "[a] cosmetic shall be deemed to be misbranded. . . [i]f its labeling is false or misleading in any particular."

36. New York EDN. Law § 6818 prohibits the misbranding of cosmetics in language identical to the FDCA in that it provides that "[a] cosmetic shall be deemed to be misbranded: a. [i]f its labeling is false or misleading in any particular."

---

[1] http://www.fda.gov/cosmetics/guidancecomplianceregulatoryinformation/ucm074201.htm see also 21 C.F.R. § 201.128

37. Under the Rules of the City of New York, cosmetics are deemed misbranded "as set forth in the Federal Food, Drug, and Cosmetic Act (21 U.S.C. § 362) or the State Education Law (§ 6818). . . ." *See* 24 R.C.N.Y. Health Code § 71.05(h).

38. Courts have recognized that state law causes of action for labeling violations are not preempted by federal law if they "seek to impose requirements that are identical to those imposed by the FDCA." *Ackerman v. Coca Cola*, No. 09-0395, 2010 WL 2925955, at *6 (E.D.N.Y. July 21, 2010). This is so because "a state statute mirroring its federal counterpart does not impose any additional requirement merely by providing a damage remedy for conduct that would otherwise violate federal law, even if the federal statute provides no private right of action." *Ackerman*, 2010 WL 2925955, at *6 (citing *Bates*, 544 U.S. at 432).

**Defendant's Products are Misbranded Because They Contain False & Misleading Claims**

39. Even though the Product does not cause breasts to physically grow, Defendant has employed numerous methods to convey its uniform, deceptive bust growth claims to consumers, including magazines, social media websites, in-store displays and most importantly, on the Product's packaging and labeling where it cannot be missed by consumers. Consumers pay a premium over other bust products, which unlike the Product are not falsely advertised as growing breasts. Typically, non-growth serums such as Eveline Cosmetics' Slim Extreme 3D Super-Concentrated Modeling Bust Serum cost $12.99 per 7.04 fluid ounce bottle. Here, based on Defendant's price of $60.00 per 1.69 fluid ounce bottle the premium is $31.89 per fluid ounce. The only reason a consumer would pay the premium price of the Product is to obtain the additional bust growth benefits, which the Product does not provide.

40. As the manufacturer, seller and/or distributor of the Product, Defendant possesses specialized knowledge regarding the content and effects of the ingredients contained in the Product on breast growth.

41. Defendant knew or should have known, but failed to disclose that the Product does not cause breasts to physically grow in volume or to lift and certainly not within the time frame advertised by Defendant and it does not have competent and reliable clinical tests to support its results given that Defendant's clinical test contained only 30 volunteers and accounted for only 28 days of use of the Product.

42. As a result of Defendant's deceptive bust claims, consumers – including Plaintiffs and Class members – have purchased the Product that does not perform as advertised. Moreover, they have paid a price premium for the Product over other bust serums sold in the market that do not claim to physically grow breasts by a full cup size in as little as six weeks. A sample of other non-growth bust products are provided below:

| BRAND | QUANTITY | PRICE | SELLER |
|---|---|---|---|
| SLIM EXTREME 3D Super-Concentrated Modeling Bust Serum -TOTAL PUSH-UP EFFECT | 7.04 fl oz. | $12.99 | Eveline Cosmetics |
| Aroma Hot Body Lift & Firm Bust Lifting Serum | 6.76 fl oz. | $15.90 | Amazon |

43. Eveline Cosmetics' Bust Serum costs approximately $1.84 per fluid ounce and Aroma's Hot Body Lift & Firm Bust Lifting Serum costs approximately $2.35 per fluid ounce. Defendant's Product costs approximately $33.73 per fluid ounce.

**Plaintiffs and Class Members were Injured as a Result of Defendant's Misleading and Deceptive Conduct**

44. Plaintiffs and Class members did not know, and had no reason to know, that Defendant's claims with regard to the Product were false and deceptive.

45. Plaintiffs and Class members relied on the labeling and representations on Defendant's Product packaging.

46. At the point of sale, Plaintiffs and Class members did not know, and had no reason to know, that Defendant's Products were misbranded as set forth herein, and would not have bought the Product had they known the truth about it.

47. At the point of sale, Plaintiffs and Class members did not know, and had no reason to know, that Defendant's bust claims were unlawful as set forth herein, and would not have bought the Product had they known the truth about it.

48. The types of representations made by Defendant would be considered by a reasonable consumer when deciding to purchase the Products.

49. As a result of Defendant's misrepresentations, Plaintiffs and thousands of other consumers throughout the United States purchased the Products.

50. Plaintiffs and Class members have been and will continue to be deceived and/or misled by Defendant's deceptive bust claims. Plaintiffs purchased and used the Product for at least six weeks during the Class period and in doing so, read and considered the Product label and packaging (including the representation that the Product physically causes breasts to increase in volume and to lift) and based their decision to buy the Product and pay the price premium on those representations. Defendant's bust growth claims were a material factor in influencing Plaintiffs' and Class members' decision to purchase and use the Product. Plaintiffs and Class

members would not have purchased the premium priced Product had they known that Defendant's bust lift and volume claims were false and misleading and that Defendant did not possess competent and reliable clinical tests to support its claims. Class members similarly were deceived and as a result, Plaintiffs and the Class members have been damaged in their purchases of the Product and have been deceived into purchasing a Product that they believed, based on Defendant's representations, would cause their breasts to lift and to grow larger within six weeks, when in fact, it does not.

51. Based on the purported bust claims conveyed in its marketing and advertising campaign, Defendant is able to price the Product at a premium over other bust serums sold by its competitors. Defendant has reaped enormous profits from its false, misleading and deceptive marketing and sale of the Product.

52. For these reasons, Defendant's bust claims are false and deceptive and in violation of the consumer protection laws of each of the 50 states and the District of Columbia, and the Products at issue are misbranded as a matter of law. Misbranded products cannot be legally manufactured, advertised, distributed, held or sold in the United States.

53. Plaintiffs bring this action on behalf of themselves and other similarly situated consumers who have purchased the Product to stop the dissemination of this false, misleading and deceptive advertising message, correct the false and misleading perception it has created in the minds of consumers, and obtain redress for those who have purchased the Product. Plaintiffs allege violations of New York's General Business Law §349, for breach of express warranty, unjust enrichment and violations of consumer protection laws in all states and the District of Columbia.

54. Through this action, Plaintiffs seek injunctive relief, actual damages, restitution and/or disgorgement of profits, statutory damages, attorneys' fees, costs and all other relief available to the Class as a result of Defendant's unlawful conduct.

## CLASS ACTION ALLEGATIONS

55.   Plaintiffs bring this action as a class action pursuant Rule 23 of the Federal Rules of Civil Procedure on behalf of the following class (the "Class"):

> All persons or entities in the United States who made retail purchases of the Product during the applicable limitations period, and/or such subclasses as the Court may deem appropriate. Excluded from the Class are current and former officers and directors of Defendant, members of the immediate families of the officers and directors of Defendant, Defendant's legal representatives, heirs, successors, assigns, and any entity in which they have or have had a controlling interest. Also excluded from the Class is the judicial officer to whom this lawsuit is assigned.

56. Plaintiffs reserve the right to revise the Class definition based on facts learned in the course of litigating this matter.

57. This action is proper for class treatment under Rules 23(b)(1)(B) and 23(b)(3) of the Federal Rules of Civil Procedure. While the exact number and identities of other Class members are unknown to Plaintiffs at this time, Plaintiffs are informed and believe that there are thousands of Class members. Thus, the Class is so numerous that individual joinder of all Class members is impracticable.

58. Questions of law and fact arise from Defendant's conduct described herein. Such questions are common to all Class members and predominate over any questions affecting only individual Class members and include:

   a.   Whether Defendant's marketing, promotion and advertising of the Product is false, fraudulent, deceptive, unlawful or misleading;

b.   Whether Defendant has breached warranties made to the consuming public about its Product;

c.   Whether the Product actually increased breast size as claimed by Defendant in the Product packaging and marketing materials;

d.   Whether Defendant's marketing, promotion, advertising and sale of the Product is and was a deceptive act or practice in the conduct of business directed at consumers, giving rise to a violation of the New York General Business Law § 349 for the New York Subclass;

e.   Whether Defendant's marketing, promotion, advertising and sale of the Product is and was a deceptive act or practice in the conduct of business directed at consumers, giving rise to consumer law violations in all other jurisdictions;

f.   Whether Plaintiffs and members of the Class sustained injuries or damages as a result of Defendant's false advertising of the Product;

g.   Whether Defendant's conduct constitutes unjust enrichment, and whether equity calls for disgorgement of unjustly obtained or retained funds, restitution to, or other remedies for the benefit of the Class;

h.   Whether Plaintiffs and members of the Class are entitled to equitable relief and prospective injunctive relief enjoining Defendant from continuing to engage in the fraudulent, deceitful, unlawful and unfair common scheme as alleged in this Complaint; and

i.   Whether Defendant's conduct rises to the level of reprehensibility under applicable law such that the imposition of punitive damages is necessary and appropriate to fulfill the societal interest in punishment and deterrence, and the

amount of such damages and/or their ratio to the actual or potential harm to the Class.

59. Plaintiffs' claims are typical of those of the Class members because Plaintiffs and the other Class members sustained damages arising out of the same wrongful conduct, as detailed herein. Plaintiffs purchased Defendant's Product during the Class Period and sustained similar injuries arising out of Defendant's conduct in violation of New York State law. Defendant's unlawful, unfair and fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. The injuries of the Class were caused directly by Defendant's wrongful misconduct. In addition, the factual underpinning of Defendant's misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all members of the Class. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the members of the Class and are based on the same legal theories.

60. Plaintiffs will fairly and adequately represent and pursue the interests of the Class and has retained competent counsel experienced in prosecuting nationwide class actions. Plaintiffs understand the nature of his claims herein, has no disqualifying conditions, and will vigorously represent the interests of the Class. Neither Plaintiffs nor Plaintiffs' counsel have any interests that conflict with or are antagonistic to the interests of the Class. Plaintiffs have retained highly competent and experienced class action attorneys to represent his interests and those of the Class. Plaintiffs and Plaintiffs' counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the Class and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the Class.

61. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by any individual class member are too small to make it economically feasible for an individual class member to prosecute a separate action, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this forum. Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

62. The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

63. The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

64. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. Additionally, individual actions may be dispositive of the interest of all members of the Class, although certain Class members are not parties to such actions.

65. Defendant's conduct is generally applicable to the Class as a whole and Plaintiffs seek, *inter alia*, equitable remedies with respect to the Class as a whole. As such, Defendant's systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

## CAUSES OF ACTION

### COUNT I

**INJUNCTION FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)**

66. Plaintiffs reallege and incorporate herein by reference paragraphs 1 – 65  herein and further allege as follows:

67. Plaintiffs bring this claim individually and on behalf of the other members of the Class for an injunction for violations of New York's Deceptive Acts or Practices Law, Gen. Bus. Law § 349 ("NY GBL § 349").

68. NY GBL § 349 provides that deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are unlawful.

69. Any person who has been injured by reason of any violation of the NY GBL § 349 may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

70. The practices employed by Defendant, whereby Defendant advertised, promoted, and marketed that its Product would physically cause the bust to lift and to increase in volume are unfair, deceptive, and misleading and are in violation of NY GBL § 349.

71. Defendant should be enjoined from marketing its Product as physically causing lift and an increase in bust volume without further specification as described above pursuant to NY GBL § 349.

72. Plaintiffs, on behalf of themselves and all others similarly situated, respectfully demands a judgment enjoining Defendant's conduct, awarding costs of this proceeding and attorneys' fees, as provided by NY GBL § 349, and such other relief as this Court deems just and proper.

## COUNT II

### VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

73. Plaintiffs reallege and incorporate herein by reference paragraphs 1 – 72 herein and further alleges as follows:

74. Plaintiffs bring this claim individually and on behalf of the other members of the Class for violations of NY GBL § 349.

75. Defendant's business acts and practices and/or omissions alleged herein constitute deceptive acts or practices under NY GBL § 349, which were enacted to protect the consuming public from those who engage in unconscionable, deceptive or unfair acts or practices in the conduct of any business, trade or commerce.

76. The practices of Defendant described throughout this Complaint, were specifically directed to consumers and violate the NY GBL § 349 for, inter alia, one or more of the following reasons:

    a.  Defendant engaged in deceptive, unfair and unconscionable commercial practices in failing to reveal material facts and information about the Product, which did, or tended to, mislead Plaintiffs and the Class about facts that could not reasonably be known by them;

    b.  Defendant failed to reveal facts that were material to the transactions in light of representations of fact made in a positive manner;

c.  Defendant caused Plaintiffs and the Class to suffer a probability of confusion and a misunderstanding of legal rights, obligations and/or remedies by and through its conduct;

d.  Defendant failed to reveal material facts to Plaintiffs and the Class with the intent that Plaintiffs and the Class members rely upon the omission;

e.  Defendant made material representations and statements of fact to Plaintiffs and the Class that resulted in Plaintiffs and the Class reasonably believing the represented or suggested state of affairs to be other than what they actually were;

f.  Defendant intended that Plaintiffs and the members of the Class rely on their misrepresentations and omissions, so that Plaintiffs and Class members would purchase the Product; and

g.  Defendant knowingly and falsely represented and advertised that the Product was fit to be used for the purpose for which it was intended, to cause breasts to lift and increase in bust size, when Defendant knew that the Product did not work as promised.

77. Under all of the circumstances, Defendant's conduct in employing these unfair and deceptive trade practices was malicious, willful, wanton and outrageous such as to shock the conscience of the community and warrant the imposition of punitive damages.

78. Defendant's actions impact the public interest because Plaintiffs and members of the Class were injured in exactly the same way as thousands of others purchasing the Product as a result of and pursuant to Defendant's generalized course of deception.

79. By committing the acts alleged in this Complaint, Defendant has misled Plaintiffs and the Class into purchasing the Product, in part or in whole, due to an erroneous belief that the Product

will physically cause breasts to grow a full cup size in as little as six weeks. This is a deceptive business practice that violates NY GBL § 349.

80. Defendant's bust claims misled Plaintiff, and are likely in the future to mislead reasonable consumers. Had Plaintiffs and members of the Class known of the true facts about the Product's failure to work as promised, they would not have purchased the Product and/or paid substantially less for another product.

81. The foregoing deceptive acts, omissions and practices were directed at consumers.

82. The foregoing deceptive acts, omissions and practices set forth in connection with Defendant's violations of NY GBL § 349 proximately caused Plaintiffs and other members of the Classes to suffer actual damages in the form of, inter alia, monies spent to purchase the Product, and are entitled to recover such damages, together with equitable and declaratory relief, appropriate damages, including punitive damages, attorneys' fees and costs.

## COUNT III

### NEGLIGENT MISREPRESENTATION
### (All States)

83. Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 82 of this Complaint, as if fully set forth herein.

84. Defendant, directly or through its agents and employees, made false representations, concealments, and nondisclosures to Plaintiffs and members of the Class.

85. In making the representations of fact to Plaintiffs and members of the Class described herein, Defendant has failed to fulfill its duties to disclose the material facts set forth above. The direct and proximate cause of this failure to disclose was Defendant's negligence and carelessness.

86. Defendant, in making the misrepresentations and omissions, and in doing the acts alleged above, knew or reasonably should have known that the representations were not true. Defendant made and intended the misrepresentations to induce the reliance of Plaintiffs and members of the Class.

87. Plaintiffs and members of the Class relied upon these false representations and nondisclosures by Defendant when purchasing the Product, which reliance was justified and reasonably foreseeable.

88. As a result of Defendant's wrongful conduct, Plaintiffs and members of the Class have suffered and continue to suffer economic losses and other general and specific damages, including but not limited to the amounts paid for the Product, and any interest that would have been accrued on those monies, all in an amount to be determined according to proof at time of trial.

## COUNT IV

### BREACH OF EXPRESS WARRANTIES
### (All States)

89. Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 88 of this Complaint, as if fully set forth herein.

90. Defendant provided Plaintiffs and other members of the Class with written express warranties, including, but not limited to, warranties that the bust serum causes "+2 to 4 cm in volume" and "+18% lift." The bust claims made by Defendant are an affirmation of fact that became part of the basis of the bargain and created an express warranty that the good would conform to the stated promise. Plaintiffs placed importance on Defendant's bust claims.

91. Defendant breached the terms of this contract, including the express warranties, with Plaintiffs and the Class by not providing a Product that grows or lifts breasts, let alone in six weeks as represented.

92. As a proximate result of Defendant's breach of warranties, Plaintiffs and Class members have suffered damages in an amount to be determined by the Court and/or jury, in that, among other things, they purchased and paid for products that did not conform to what Defendant promised in its promotion, marketing, advertising, packaging and labeling, and they were deprived of the benefit of their bargain and spent money on products that did not have any value or had less value than warranted or products that they would not have purchased and used had they known the true facts about them.

## COUNT V

### UNJUST ENRICHMENT
### (All States)

93. Plaintiffs reallege and incorporate herein by reference paragraphs 1 – 92 of this Complaint, as if fully set forth herein.

94. Defendant received certain monies as a result of its uniform deceptive marketing of the Product that are excessive and unreasonable.

95. Plaintiffs and the Class conferred a benefit on Defendant through purchasing the Product, and Defendant has knowledge of this benefit and has voluntarily accepted and retained the benefits conferred on them.

96. Defendant will be unjustly enriched if it is allowed to retain such funds, and each Class member is entitled to an amount equal to the amount they enriched Defendant and for which Defendant has been unjustly enriched.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all other similarly situated, seeks judgment against Defendant, as follows:

a.  An Order that this action be maintained as a class action and appointing Plaintiffs as  representative of the Class;

b.  An Order appointing the undersigned attorney as class counsel in this action;

c.  Restitution and disgorgement of all amounts obtained by Defendant as a result of its misconduct, together with interest thereon from the date of payment, to the victims of such violations;

d.  All recoverable compensatory and other damages sustained by Plaintiffs and the Class;

e.  Actual and/or statutory damages for injuries suffered by Plaintiffs and the Class and in the maximum amount permitted by applicable law;

f.  An order (1) requiring Defendant to immediately cease its wrongful conduct as set forth in this Complaint; (2) enjoining Defendant from continuing to misrepresent and conceal material information and conduct business via the unlawful, unfair and deceptive business acts and practices complained of herein; (3) ordering Defendant to engage in a corrective advertising campaign; and (4) requiring Defendant to reimburse Plaintiffs and all members of the Class the amounts paid for the Product;

g.  Statutory pre-judgment and post-judgment interest on any amounts;

h.  Payment of reasonable attorneys' fees and costs; and

i.  Such other relief as the Court may deem just and proper

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs, on behalf of themselves and all others similarly situates, demands a trial by jury on all questions of fact raised by the Complaint.

Dated: January 21, 2015

Respectfully submitted,

LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs and the Class*

By: _____
          C.K. Lee